UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Beckwith Builders, Inc.,
    Plaintiff

        v.                              Civil No. 04-cv-282-SM
                                        Opinion No. 2006 DNH 106
William Depietri;
Beth Depietri;
Wood & Clay, Inc.;
Battle Associates, Inc.;
R.C. Searles Associates, Inc.;
Margulies & Associates, Inc.;
and Lakeshore Realty Trust,
    Defendants

### **O R D E R**

Beckwith Builders, Inc. ("Beckwith") has sued a host of
defendants for injunctive relief and damages, asserting claims of
copyright infringement (Count I), trademark infringement (Count
II), unfair competition and/or false designation of origin (Count
III), unjust enrichment (Count IV), violation of the New
Hampshire Consumer Protection Act (Count V), intentional
interference with contractual relations (Count VI), and breach of
contract (Count VII), all arising out of the design and
construction of a house that is allegedly identical or
substantially similar to a house designed and built by Beckwith.
Before the court is a motion to dismiss filed by William and Beth
Depietri ("the Depietris"), Wood & Clay, and Battle.  Beckwith

objects.  For the reasons given, the motion to dismiss is granted
in part and denied in part.

## The Legal Standard

A motion to dismiss for "failure to state a claim upon which
relief can be granted," FED. R. CIV. P. 12(b)(6), requires the
court to conduct a limited inquiry, focusing not on "whether a
plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims."  Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974).  When considering a motion to
dismiss under FED. R. CIV. P. 12(b)(6), the court must "accept as
true the factual allegations of the complaint and construe all
reasonable inferences therefrom in favor of [plaintiff]."  Perry
v. N.E. Bus. Serv., Inc., 347 F.3d 343, 344 (1st Cir. 2003)
(citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16
(1st Cir. 1998)).  However, the court need not credit "claims
that are made in the complaint if they are 'bald assertions' or
'unsupportable conclusions.'"  United States ex rel. Karvelas v.
Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004)
(quoting Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st
Cir. 2002)).  Finally, "[a] district court may grant a 12(b)(6)
motion to dismiss for failure to state a claim upon which relief
can be granted only if 'it clearly appears, according to the

2

facts alleged, that the plaintiff cannot recover on any viable theory.'" Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

## Background

The relevant facts, as alleged in Beckwith's second amended complaint (document no. 52), are as follows.

Beckwith designs and builds custom, one-of-a kind houses. Approximately seventy-five percent of its business comes from customers who see one of the houses it has built.

In March 2000, Beckwith began construction of a shingle-style home on Lot 15 in Cedar Cove, in Alton, New Hampshire. Beckwith built that home ("the Cedar Cove home") "on spec," with the intention of offering it for sale upon completion.

The plans for the Cedar Cove home were initially drawn in January 2000, and were slightly modified before construction in March.  On November 15, 2004, the United States Copyright Office issued three Certificates of Registration to Beckwith for: (1) "Cedar Cove Project" as an architectural work embodied in a set

of schematic drawings;[1] (2) "Cedar Cove Project 2004" as technical drawings;[2] and (3) "Cedar Cove Project 2004" as an architectural work embodied in the completed Cedar Cove home.[3]

Beckwith posted the plans for the Cedar Cove home on its web site, and also made them available to real estate agents and people interested in buying the house.  William Depietri's real estate agent, Lisa LaFrenierre, contacted Beckwith's real estate agent to inquire about the Cedar Cove home on Depietri's behalf.  LaFrenierre put Depietri in contact with Beckwith's president, Les Beckwith, in the spring or early summer of 2001.  Depietri went inside the Cedar Cove home at least three times, once with Beckwith's real estate agent, once with Les Beckwith, and once

---

[1] This registration, VAu640-190, lists Steven K. Stokes as the author, Beckwith as the assignee/claimant, and 1999 as the year in which the work was completed.  It also represents the registered work to have been unpublished.

[2] This registration, VA 1-280-015, lists Beckwith as the author/claimant, 2000 as the year in which the work was completed, and January 15, 2000 as the date on or before which the work was first published.  It also identifies the work as a derivative work based upon the work registered in VAu640-190.

[3] This registration, VA 1-280-016, lists Beckwith as the author/claimant, 2000 as the year in which the work was completed, January 15, 2000 as the date on or before which the work was first published, and 2004 as the year in which construction of the house was completed.  It also identifies the work as a derivative work based upon the work registered in VAu640-190.

4

with his own real estate agent.  On at least one occasion, Depietri measured the room sizes and layout of the house.  Les Beckwith also gave Depietri plans to the Cedar Cove home on several occasions, once by fax.  Depietri and Beckwith were unable to come to terms on a purchase price for the Cedar Cove home.

Given the favorable public response to the Cedar Cove home, Beckwith used an image of that house in its marketing material, including on its letterhead and web site.

Depietri did not purchase the Cedar Cove home, but, in the spring of 2002, he asked Beckwith to build a house similar to the Cedar Cove home on a lot on Clark Road in Wolfeboro.  Depietri and Beckwith agreed to a "costs plus" construction price, a time frame for construction, and a scope of work.  Depietri offered to pay a deposit to lock in the construction schedule, but Beckwith agreed to lock in the schedule without payment of a deposit, and deferred payment of the deposit until construction was under way. Beckwith then began construction planning, calendared the time for construction, and did not calendar other jobs during the time frame set aside for building Depietri's house.

In June of 2002, Depietri met with Les Beckwith to discuss the differences between the Cedar Cove home and the home Beckwith was to build for Depietri.  Shortly thereafter, Depietri phoned Les Beckwith and told him he no longer wanted Beckwith to build the house.  At some point, either before or after he said he no longer wanted Beckwith to build the house, Depietri acquired two sets of architectural drawings, one by Searles (dated November 6, 2001), the other by Margulies (dated February 8, 2002).[4]

Near the end of the summer of 2003, Les Beckwith saw a house on Depietri's Clark Road property (the "Clark Road home") that appeared to be similar to the Cedar Cove home.  In front of the

_____

[4] There is some confusion in the second amended complaint regarding the timing of Depietri's decision not to go with Beckwith and his acquisition of plans from other architects.  At one point Beckwith alleges that "Depietri unexpectedly called Les Beckwith and said he was 'going in a different direction,' with regard to the house, and that he was no longer going forward with the agreement [with Beckwith]" at some point after a June 2002 meeting between Beckwith and Depietri.  (Second Am. Compl. ¶ 40.) Subsequently, however, Beckwith alleges that it

> has been provided by Defendant Depietri [with] a series of architectural floor plans, the first of which bears the date November 6, 2001, approximately two weeks after Depietri told the Plaintiff he was going in another direction and not using Plaintiff to design and build a home on the Clark Road property.

(Second Am. Compl. ¶ 49.)  As the timing of those two events is not material to defendants' motion to dismiss, there is no need to resolve the apparent discrepancy in the facts alleged.

Clark Road home were commercial signs advertizing defendants
Battle Associates, which itself designs and builds residential
homes, and Wood & Clay, which constructs residential homes.

In January and February of 2004, cease and desist letters
were sent to Depietri, Battle, and Wood & Clay.  This suit
followed, by complaint dated July 24, 2004.  The three copyright
registrations on which Beckwith is suing became effective on
November 15, 2004.

Count I is a copyright infringement claim in which Beckwith
asserts that defendants copied the plans for the Cedar Cove home
and created an unauthorized derivative work, i.e., the Clark Road
home itself.  In Count II, Beckwith asserts that defendants have
attempted to pass off the house they built as Beckwith's work and
have diluted Beckwith's trademark (i.e., the image of the Cedar
Cove home on its letterhead), by building the similar-looking
Clark Road home and placing Battle and Wood & Clay signs in front
of it.  Count III is a Lanham Act claim in which Beckwith asserts
that defendants are liable for unfair competition/false
designation of origin arising from the placement of their signs
in front of the Clark Road home.  In Count IV, Beckwith asserts a
state law claim of unjust enrichment based upon the profits

defendants earned by allegedly copying the Cedar Cove home.
Count V asserts that defendants violated N.H. REV. STAT. ANN.
("RSA") § 358-A, New Hampshire's Consumer Protection Act, by,
inter alia, copying the plans for the Cedar Cove home, and the
Cedar Cove home itself, and passing off that copy as a Beckwith
product.  In Count VI, Beckwith claims that defendants interfered
with its prospective contractual relations with potential
customers by passing off their work as Beckwith's and/or falsely
designating the origin of their work.  Finally, Count VII is a
breach of contract claim against Depietri.

## Discussion

The Depietris, Battle, and Wood & Clay move to dismiss on
grounds that: (1) the state law claims in Counts II, IV, V, and
VI are preempted by section 301(a) of the Copyright Act; (2)
Count III fails to state a claim because the acts alleged –
copying an architectural plan or an architectural work and
placing the copier's signs around the resulting structure – does
not constitute a false designation of origin; (3) Counts II, III,
and V, to the extent they assert trade-dress infringement, fail
to state a claim because Beckwith has failed to allege that the
Cedar Cove home is non-functional; (4) Counts II, III, and V fail
to state a claim because neither the Cedar Cove home nor its

8

image is inherently distinctive, and Beckwith has not alleged facts to establish that the home's design or image have acquired secondary meaning; (5) Count VI fails to state a claim for intentional interference with prospective contractual relations; (6) Count I fails to state a claim for: (a) direct infringement of the architectural work by Battle; (b) direct infringement of the architectural plans and drawings by Wood & Clay; or (c) direct infringement of either the architectural work or the plans by William or Beth Depietri; (7) Count VII fails to allege sufficient facts to establish the elements of a contract; (8) Count I fails to allege facts that support an award of attorney's fees; and (9) Beckwith fails to allege sufficient facts to establish the liability of Beth Depietri under any legal theory.

### A. Beth Depietri

Beth Depietri moves to dismiss all claims against her on grounds that the facts alleged in the second amended complaint do not include a single allegation of any act or omission on her part that could give rise to liability under any legal theory. Given the facts as alleged – or the absence thereof – there is no legal theory under which Beckwith might recover against Beth Depietri.  Accordingly, all claims against her are dismissed.

B. Breach of Contract

Beckwith claims it had a valid contractual agreement with William Depietri for the construction of a home similar to the Cedar Cove home and that Depietri breached that agreement by declining to perform and by misappropriating Beckwith's copyrighted plans for use in the construction of a home similar to the Cedar Cove home.  Depietri moves to dismiss on grounds that Beckwith has failed to allege facts which, if proven, would establish the formation of a contract.

Plaintiff's breach of contract claim is sketchy at best. While Beckwith alleges that it agreed with Depietri on "a costs plus construction price, time frame of construction, and scope of work."  Beckwith also alleges the existence of an (oral) agreement with Depietri, suggests part-performance on its part, and asserts that Depietri breached the agreement, all of which is sufficient to survive a Rule 12(b)(6) motion under the plaintiff-friendly standards of federal notice pleading.  See Brown v. Credit Suisse First Boston LLC (In re Credit Suisse First Boston Corp. Analyst Reports Secs. Litig.), 431 F.3d 36, 46 (1st Cir. 2005) (referring to "the generous notice pleading formulation of FED. R. CIV. P. 8(a)(2)"); In re Tyco Int'l Multidistrict Litig., Nos. 02-1335-B & 02-1343-B, 2004 WL 524429 (D.N.H. Mar. 16, 2004)

(citing <u>Carroll v. Kahn</u>, No. 03–CV0656, 2003 WL 22327299, at *4
(N.D.N.Y. Oct. 9, 2003) ("Contrary to Defendants' assertion,
Plaintiff need not plead all the material elements of a contract
to state a claim.")).  Accordingly, Depietri is not entitled to
dismissal of Beckwith's breach of contract claim.

### C. Lanham Act – False Designation of Origin

In Count III, Beckwith asserts that "Defendants' copying of
Beckwith Builders, Inc.'s Cedar Cove Home architectural plan,
design, image and structure in conjunction with the placement of
signs in and around the copied structure constitutes a false
designation of origin," in violation of 15 U.S.C. §
1125(a)(1)(A).  Defendants move to dismiss on grounds that the
conduct alleged by Beckwith does not constitute a false
designation of origin under the Lanham Act.

Under the relevant provision of the Lanham Act, it is
unlawful for

> [a]ny person . . . on or in connection with any goods
> or services . . . [to] use[] in commerce . . . any
> false designation of origin . . . which . . . is likely
> to cause confusion, or to cause mistake, or to deceive
> . . . as to the origin, sponsorship, or approval of his
> or her goods, services, or commercial activities by
> another person.

11

15 U.S.C. § 1125(a)(1)(A).  There are, however, limits to the

sweep of § 1125(a)(1)(A), especially when, as here, the goods at

issue consist of intellectual property.  The Supreme Court has

held that "the phrase 'origin of goods' in the Lanham Act . . .

refers to the producer of the tangible goods that are offered for

sale, and not to the author of any idea, concept, or

communication embodied in those goods."  Dastar Corp. v.

Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003)

(citation omitted).  Beckwith's complaint asserts that the Clark

Road home was labeled with a designation of origin — via the

signs placed near it.  But, because the signs in front of that

house accurately identified those who physically produced that

tangible object, the facts alleged by Beckwith fail to state a

claim of false designation of origin under the Lanham Act.[5]

_____

[5] In light of both the facts of this case and Dastar,
Beckwith's reliance on Johnson v. Jones, 149 F.3d 494 (6th Cir.
1998) is misplaced.  In Johnson, Architect A produced one set of
plans by tracing a set of plans drawn by Architect B, and
produced a second set of plans by removing Architect B's name and
seal from a set of Architect B's plans, and replacing them with
his own name and seal.  Id. at 499.  Thus, the product was a set
of plans, and the false designation of origin was Architect A's
name and seal on plans drawn by Architect B.  Here, by contrast,
the product is the Clark Road home, and the designation of origin
is the pair of signs out front.  So, this case is not factually
analogous to Johnson.  Moreover, the conduct deemed actionable in
Johnson – one architect identifying as his own a set of drawings
made by another – remains actionable under Dastar.  In that case,
which involved a television series, the Court explained that the
plaintiff's Lanham Act "claim would undoubtedly be sustained if

D. Intentional Interference with Prospective Contractual
Relations

Count VI is a state claim for intentional interference with
prospective contractual relations.  Beckwith asserts that by
passing off the Clark Road home as Beckwith's and/or by falsely
designating the origin of the Clark Road home,[6] defendants
induced customers to contract with them rather than Beckwith.
Defendants move to dismiss Count VI on grounds that Beckwith has
failed to allege that it lost the business of any specific
prospective customer with whom it had a relationship and a

_____

Dastar had bought some of New Line's Crusade videotapes and
merely repackaged them as its own."  Dastar, 539 U.S. at 31.
Thus, in this case, there might be a Lanham Act false designation
of origin claim against a person who bought the Cedar Cove home
and then tried to sell it by marketing it as the product of an
entity other than Beckwith.  But those are not the facts of this
case.

   [6] Plaintiff's claim is somewhat confusing, as it appears to
combine, or perhaps plead in the alternative, two different
theories, "passing off" and "reverse passing off."  As the
Supreme Court has explained:

       Passing off (or palming off, as it is sometimes
   called) occurs when a producer misrepresents his own
   goods or services as someone else's.  See, e.g., O. &
   W. Thum Co. v. Dickinson, 245 F. 609, 621 (6th Cir.
   1917).  "Reverse passing off," as its name implies, is
   the opposite: The producer misrepresents someone else's
   goods or services as his own.  See, e.g., Williams v.
   Curtiss-Wright Corp., 691 F.2d 168, 172 (3d Cir. 1982).

Dastar, 539 U.S. at 28.  It is difficult to see how a seller
could simultaneously pass off his product as someone else's while
also representing that product as being his own.

reasonable expectation of contractual relations.  Beckwith
counters that defendants' argument is not appropriate in a motion
to dismiss.

Under the common law of New Hampshire, "[o]ne who, without a
privilege to do so, induces or otherwise purposely causes a third
person not to . . . enter into or continue a business relation
with another is liable to the other for the harm caused thereby."
Baker v. Dennis Brown Realty, Inc., 121 N.H. 640, 644 (1981)
(quoting Bricker v. Crane, 118 N.H. 249, 252 (1978)).  However,
there appears to be "no authority for the proposition that a
plaintiff may bring an action for tortious interference with
prospective contractual relations based solely on a plaintiff's
potential for capturing a share of a given market."  Heritage
Home Health, Inc. v. Capital Region Health Care Corp., Civ. No.
95-558-JD, 1996 WL 655793, at *4 (D.N.H. Oct. 1, 1996) (granting
defendant's motion for judgment on the pleadings).  Rather, one
"state[s] a claim for tortious [or intentional] interference with
prospective contractual relations only to the extent [one] seeks
relief for the defendants' interference with already existing
relationships that give rise to a 'reasonable expectation of
economic advantage.'"  Id. (emphasis added) (quoting Fineman v.
Armstrong World Indus., 774 F. Supp. 225, 234 (D.N.J. 1991)

14

(interpreting Restatement (Second) of Torts § 766B), rev'd on other grounds [1992-2 TRADE CASES ¶ 70,010], 980 F.2d 171 (3d Cir. 1992)); see also Montrone v. Maxfield, 122 N.H. 724, 726 (1982) (explaining that "prospective contractual relations" only exist when plaintiff has an established, pre-contractual relationship with a third party).

Here, Beckwith has not alleged that any existing relationship with a potential customer was interfered with by defendants.  Rather, it alleges only the kind of speculative prospective contractual relations deemed unprotectable by Heritage Home Health and Montrone, i.e., contracts that may have come into existence with potential customers with whom Beckwith had not yet developed a relationship.  Accordingly, Beckwith's second amended complaint fails to state a claim for intentional interference with prospective contractual relations.

    E. Preemption by 17 U.S.C. § 301(a)

Defendants move to dismiss Counts II, IV, V, and VI on grounds that those claims for trademark infringement (Count II), unjust enrichment (Count IV), violation of the CPA (Count V), and intentional interference with prospective contractual relations (Count V) are all preempted by the Copyright Act.

15

The preemption provision of the Copyright Act provides, in pertinent part:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  The court of appeals for this circuit has explained:

> Section 301(a) precludes enforcement of any state cause of action which is equivalent in substance to a federal copyright infringement claim.  See generally Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 846–47 (10th Cir. 1993); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 658–60 (4th Cir. [1993]); 1 [MELVILLE B. NIMMER & DAVID NIMMER,] NIMMER [ON COPYRIGHT] § 1.01[B][h], at 1–35 to 1–36.1 [(1993)].  Courts have developed a functional test to assess the question of equivalence.  "[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action."  Gates Rubber, 9 F.3d at 847 (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2nd Cir. 1992)).

16

Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164
(1st Cir. 1994) (footnote and parallel citations omitted).

### 1. Count II

In Beckwith's second amended complaint, Count II is titled
"Infringement of Beckwith Builders, Inc. Trademark."  But unlike
Count III, Count II does not refer to the Lanham Act, prompting
defendants to conclude that Count II is a state law claim of
unfair competition in the form of passing off and trademark
dilution.  On that basis, defendants contend that Count II is
preempted by 17 U.S.C. § 301(a).  Beckwith does not address the
preemption issue with respect to Count II in its objection.

As a preliminary matter, it is necessary to establish
precisely what claim(s) Beckwith is asserting in Count II.
Beckwith appears to claim that: (1) by designing and building a
copy of the Cedar Cove home and placing their own signs in front
of it, Battle and Wood & Clay "attempt[ed] to 'pass off' their
copied structure as Beckwith Builders, Inc.'s Cedar Cove Home"
(Second Am. Compl. ¶ 65); and (2) by designing and constructing a
copy of the Cedar Cove home, defendants diluted Beckwith's
trademark, which consists of the image of the Cedar Cove home.

According to defendants, both aspects of Count II are preempted by § 301(a).

Defendants are entitled to dismissal of the "passing off" portion of Count II.  While that claim is phrased as a passing off claim, as opposed to a reverse passing off claim, the facts alleged simply do not fit the passing off paradigm.  As explained in Dastar, the relevant product is the Clark Road home itself, and the only representation to the public concerning the origin of that product is that communicated by the signs.[7]  Thus, there is no factual basis for a claim that defendants attempted to pass off the Clark Road home as a Beckwith product.  To the contrary, the signs plainly identified the Clark Road home as a product of Battle and Wood & Clay.

---

[7] If plaintiff intends to suggest that the house itself is a representation to the public, then there are two problems. First, because any false representation made by the house itself results from its being a copy of the Cedar Cove home, there is no "extra element" of deceit, i.e., any sort of (mis)representation other than the product of the alleged copying.  And without such an "extra element," that claim would be preempted.  Second, if the claim is that defendants attempted to pass off the Clark Road home as a Beckwith product by copying the Cedar Cove home, any misinformation concerning the origin of the Clark Road home that may have been conveyed by its form and appearance was necessarily counteracted by the signs, which listed Battle and Wood & Clay as the designer and builder.

The facts come closer to supporting a claim for reverse passing off, i.e., that defendants claimed to be the producers of a product actually produced by Beckwith, but such a claim fails for two reasons.  First, the only relevant product is the Clark Road home, see Dastar, 539 U.S. at 37, and nowhere does Beckwith allege that it produced the Clark Road home.  Beckwith claims just the opposite, that defendants' construction of the Clark Road home constitutes infringement of Beckwith's copyrights in the plans for the Cedar Cove home and the architectural work embodied in the Cedar Cove home.  Second, even if the court were to construe the passing off portion of Count II as a claim of reverse passing off, such claims are preempted by 17 U.S.C. § 301(a).  According to Nimmer:

> [C]rucial to liability under a deceptive trade
> practices cause of action is the element of
> misrepresentation or deception, which is no part of a
> cause of action for copyright infringement.  Thus,
> there is no pre-emption of the state law of fraud, nor
> of the state law of unfair competition of the "passing
> off" variety.  If A claims that B is selling B's
> products and representing to the public that they are
> A's, that is passing off.  If, by contrast, B is
> selling B's products and representing to the public
> that they are B's, that is not passing off.  A claim
> that the latter activity is actionable because B's
> product replicates A's, even if denominated "passing
> off," is in fact a disguised copyright infringement
> claim, and hence pre-empted.

1 NIMMER, supra, § 1.01[B][1][e].  Given that the Clark Road home
was built by defendants (from plans drawn by defendants), this
case falls neatly into the second category identified by Nimmer:
B selling B's products and representing to the public that they
are B's.  Thus, to the extent plaintiff has stated a claim for
reverse passing off, that claim is preempted by § 301(a).

     The dilution aspect of Count II is also preempted.
According to Beckwith, "[d]efendant's duplication of the Cedar
Cove Home design and image, at the very least, creates a
likelihood that Beckwith Builders, Inc.'s Cedar Cove Home design
and building will lose its ability to identify Beckwith Builders,
Inc.'s products and to distinguish Beckwith Builders, Inc.'s
products from Defendants[']."  (Second Am. Compl. ¶ 66.)  Because
Beckwith's dilution claim "requires [no] extra element, beyond
mere copying," it is preempted by § 301(a).

          2. Count IV
     Count IV is a claim for unjust enrichment in which Beckwith
asserts that "[b]y profiting from [their] wrongful copying,
Defendants have been unjustly enriched at Beckwith Builders,
Inc.'s expense."  (Second. Am. Compl. ¶ 76.)  Defendants argue
that claim is preempted, and Beckwith appears not to contest the

point in its objection to defendants' motion to dismiss.  As

noted by Professor Nimmer, "a state law cause of action for

unjust enrichment or <u>quasi contract</u> should be regarded as an

'equivalent right' and hence, pre-empted insofar as it applies to

copyright subject matter."  1 NIMMER, <u>supra</u>, § 1.01[B][1][g].

Because plaintiff's unjust enrichment claim "requires [no] extra

element, beyond mere copying," it is preempted by § 301(a).


         <u>3. Count V</u>

     Count V is a claim under New Hampshire's Consumer Protection

Act ("CPA"), RSA 358-A:2, I-III, V, and VII.  More specifically,

plaintiff asserts:

          By creating architectural plans, designs and a
          structure, identical to or substantially similar to
          Beckwith Builders, Inc.'s Cedar Cove Home, Defendants
          are "passing off" their goods as those of Beckwith
          Builders, Inc., are causing a likelihood of confusion
          and misunderstanding as to the source of Defendants'
          goods, and are causing a likelihood of confusion and
          misunderstanding as to Defendants' goods' connection,
          affiliation, association with, and/or sponsorship by
          Beckwith Builders, Inc.

(Second Am. Compl. ¶ 81.)


     Defendants contend that Count V is preempted by § 301(a)

because the only conduct asserted as the basis for Beckwith's CPA

21

claim is defendants' alleged copying of the Cedar Cove Home.
Beckwith contends that its CPA claim is not preempted because it
alleges an element of deception or fraud, making it qualitatively
different from a copyright infringement claim.  According to
Beckwith, the element of deception that distinguishes its CPA
claim from a claim of copyright infringement is defendants'
attempt at passing off.

Beckwith's argument is not persuasive.  The facts alleged by
Beckwith simply do not support a passing off claim.  According to
Beckwith, the only product that has been given a false
designation of origin is the Clark Road home, which is
defendants' product, and the only representation by defendants
concerning the origin of that product is that communicated by the
signs in the front yard, which identify Battle and Wood & Clay as
the source of the product – which they are.  On the other hand,
accepting Beckwith's theory that the Clark Road home is itself a
representation concerning its origin that falsely attributes the
construction of the house to Beckwith, there is no
misrepresentation alleged other than that resulting from
defendants' alleged copying of the Cedar Cove home and/or its
plans, which dooms that claim under the § 301(a) requirement of
an "extra element."

### 4. Count VI

Because Beckwith has failed to state a claim for intentional interference with prospective contractual relations, see section D, supra, it is unnecessary to determine whether such a claim is preempted by § 301(a).

### F. Count I

Count I is Beckwith's claim of copyright infringement.  In it, Beckwith appears to assert that every defendant infringed each of its three copyrights.  Those three copyrights cover: (1) an architectural work embodied in a set of schematic drawings (VAu640-190); (2) a set of technical drawings (VA 1-280-015); and (3) an architectural work embodied in the fully constructed Cedar Cove home (VA 1-280-016).  Wood & Clay (the builder) argues that based on the facts alleged, Beckwith has failed to state a claim against it for infringing the copyright on the Cedar Cove technical drawings (VA 1-280-015) and the architectural work embodied in the Cedar Cove schematics (VAu640-190).  Battle (the designer) argues that based on the facts alleged, Beckwith has failed to state a claim against it for infringing the copyright on the architectural work embodied in the completed Cedar Cove home.  And the Depietris argue that based on the facts alleged,

Beckwith has failed to state a claim against them for infringing any of its copyrights.

### 1. Copyright Ownership

Initially, defendants challenge Beckwith's ownership of the copyrights at issue, and suggest that Beckwith is without standing to bring these infringement claims.

The applicable statute provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  But, it is generally accepted in copyright law that an assignment that purports to transfer "all right, title, and interest" generally does not include the right to sue for acts of infringement that take place prior to the effective date of the assignment, unless the right to accrued causes of action is explicitly included in the grant language. Id.; see also 3 NIMMER, supra, § 12.02[B].  Thus, "the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner and the assignor retains the right to bring actions accruing during its ownership

of the right, even if the actions are brought subsequent to the assignment."  ABKCO, 944 F.2d at 980.

Moreover, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  But § 204(a) can be satisfied by an oral assignment later ratified in writing.  See, e.g., Billy-Bob Teeth v. Novelty, Inc., 329 F.3d 586, 591 (7th Cir. 2003); see also 3 NIMMER, supra, § 10.03[A][3]. Such oral assignments — later confirmed in writing — are deemed to be valid ab initio.  Id.  And, as Professor Nimmer notes, numerous courts have held that when a particular transfer is undisputed by the parties, "it would be anomalous to permit a third party infringer to invoke this [writing] provision against the licensee."  3 NIMMER, supra, § 10.03[A][3] (quoting Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27, 36 (2d Cir. 1982)) (footnote omitted).

In this case, it appears to be undisputed that an oral assignment of rights to Beckwith occurred in October of 1999, but that assignment was not memorialized in writing until October 22,

25

2004.  There is no apparent dispute between the assignor, Mr. Stokes, the architect of the works at issue, and the assignee, Beckwith, regarding the fact of assignment in 1999.  Accordingly, the oral assignment of rights in 1999 is valid <u>ab initio</u>, given the subsequent written memorialization of that earlier assignment, executed in 2004.

Although neither the 1999 oral assignment, nor the 2004 written affirmation expressly mention a conveyance of the right to accrued causes of action for infringement, the specific articulation of such rights is unnecessary for plaintiffs to maintain their copyright infringement claims in this suit. Beckwith acquired the copyrights at issue in 1999 by oral assignment, which was rendered valid <u>ab</u> <u>initio</u>.  Accordingly, it owned the copyrights at the time of the alleged infringement. Beckwith, therefore, had the right to sue for infringement when the infringement allegedly occurred.  <u>See</u> <u>ABKCO Music, Inc.</u>, 944 F.2d at 980. Whether Beckwith also obtained the right to sue for <u>past</u> infringement, the question at issue in <u>ABKCO Music, Inc.</u>, is moot here because the alleged infringement at issue plainly occurred, if at all, well after 1999, when Beckwith acquired the relevant copyrights.

Accordingly, defendants' argument that Beckwith lacks standing to bring its copyright infringement claims in the instant action is without merit.

### 2. Wood & Clay

Construing all reasonable inferences in its favor, Beckwith alleges in its second amended complaint that Wood & Clay constructed the Clark Road home from plans drawn by Battle, and placed a sign bearing its name in front of the Clark Road home. On those factual allegations, Beckwith asserts that Wood & Clay is liable for copyright infringement for "caus[ing] the production, building and public display of a home that is identical, an unauthorized derivative work and/or substantially similar to the Cedar Cove Home in question." (Second Am. Compl. ¶ 59.) According to Wood & Clay, the facts alleged could support a claim that it infringed Beckwith's copyright in the architectural work, as embodied in the Cedar Cove home, but do not support a claim that it infringed Beckwith's copyrights in the technical and schematic drawings covered by VAu640-190 and VA 1-280-015. Wood & Clay is partially correct.

Under case law developed prior to passage of the Architectural Works Copyright Protection Act ("AWCPA"), it was

27

well established that "a building [was] not a 'copy' of the
underlying plans, with the result that construction of the
structure [did] not constitute infringement."  1 NIMMER, supra, §
2.08[D][2][a] at 1-124 (Rel. 63, Apr. 2004) (citations omitted);
see also Robert R. Jones Assocs., Inc. v. Nino Homes, 858 F.2d
274, 280 (6th Cir. 1988) ("one may construct a house which is
identical to a house depicted in copyrighted architectural plans,
but one may not directly copy those plans and then use the
infringing copy to construct the house").  The AWCPA created a
new category of protectable works, see 17 U.S.C. § 102(a)(8), but
it did not alter the existing state of the law regarding
copyrighted architectural plans.  See Nat'l Med. Care, Inc. v.
Espiritu, 284 F. Supp. 2d 424, 435 (S.D. W.Va. 2003) ("most
courts agree that copying a structure depicted in plans, without
copying the plans themselves, is not copyright infringement")
(citations omitted).  Consequently, as was the case before
passage of the AWCPA, a building is not a copy of an
architectural plan.  Accordingly, as a matter of law, Wood & Clay
– which is alleged to have built the Clark Road home, but not to
have copied Beckwith's plans in any way (or to have directed
Battle to copy Beckwith's plans in any way) – cannot be liable
for infringing the technical drawings registered in VA 1-280-015.

28

The cases Beckwith relies on are not to the contrary, and do not, as Beckwith suggests, establish a rule of joint and several liability applicable to the facts alleged in this case.  <u>Eales v. Environmental Lifestyles, Inc.</u>, 958 F.2d 876 (9th Cir. 1992), says nothing about joint and several liability of independent entities.  The four defendants in that case were a homeowner, a contracting company hired by the homeowner, that company's president, and a person hired by the company to serve as construction superintendent on the homeowner's project.  <u>Id.</u> at 878.  Here, Beckwith alleges no facts connecting Wood & Clay with Battle or any other architect who may have copied the plans for the Cedar Cove home.  <u>Robert R. Jones</u> is factually distinguishable.  There, the defendant builder acquired copyrighted architectural plans and gave them to an architect with instructions to copy them.  858 F.2d at 276.  No such allegation has been made against Wood & Clay in this case.  And in <u>Arthur Rutenberg Homes, Inc. v. Maloney</u>, 891 F. Supp. 1560 (M.D. Fla. 1995), in which the defendants were a homeowner, an architectural drafter, and a builder, the builder was found directly liable only for infringing the architectural work at issue, not the architectural plans.  Thus, <u>Maloney</u> actually supports the proposition that Wood & Clay, if it is liable for infringement at all, is liable only for infringing Beckwith's

copyrighted architectural work, but not the technical drawings
registered in VA 1-280-015.

The foregoing analysis, however, does not apply to VAu640-
190.  While Wood & Clay appears to treat that registration as
covering a set of schematic drawings, the registration form
itself identifies the nature of the registered work as an
"architectural work."  Thus, the registration does not cover a
set of schematic drawings as a pictorial, graphic or sculptural
work, but, rather, covers an architectural work embodied in a set
of schematic drawings.  On that basis, the rule described by
Nimmer does not apply to that copyright.

### 3. Battle

In its second amended complaint, Beckwith alleges that
Battle produced a set of plans for the Clark Road home that
William Depietri filed with the Town of Wolfeboro as part of the
process of obtaining a construction permit.  Beckwith also
alleges that Battle placed a sign bearing its name in front of
the Clark Road home.  On those factual allegations, Beckwith
asserts that Battle is liable for copyright infringement for
copying its technical drawings and its architectural work, as
embodied in both a set of schematic drawings (VAu640-190) and the

30

completed Cedar Cove home (VA 1–280–016).  According to Battle,
the facts alleged could support a claim that it infringed
Beckwith's copyright on the Cedar Cove technical drawings –
presuming that Beckwith can prove that Battle's plans are a copy
of the copyrighted technical drawings.  But, says Battle, those
facts cannot support a claim that it infringed the Cedar Cove
architectural work as embodied in the completed structure
because, as a matter of law, "[i]f the construction of a home
that is identical to one depicted in copyrighted architectural
plans is not an infringement of the plans, the creation of
architectural plans likewise does not constitute an[]
infringement of a copyrighted architectural building."

     Battle's argument misses the nature of copyright protection
afforded to architectural works and plans.  17 U.S.C. § 101
provides that an "'architectural work' is the 'design of a
building as embodied in any tangible medium of expression.'"  T-
Peg, Inc. v. Vermont Timber Works, Inc., 2006 U.S. App. LEXIS
21153, *26 (1st Cir. 2006).  Further, under the "more expansive
definition" given to architectural plans in the AWCPA, "the
holder of a copyright in an architectural plan . . . has two
forms of protection, one under the provision for an
'architectural work' under 17 U.S.C. § 102(a)(8), and another

31

under the provision for a 'pictorial, graphical, or sculptural
work' under 17 U.S.C. § 102(a)(5)." Id. at *27.

Put slightly differently, an architectural work may be
embodied in any tangible medium of expression, including
architectural plans or a building itself.  Such plans, in
addition to the protection afforded under the architectural works
copyright also enjoy protection as pictorial, graphical, or
sculptural works.  In this case, then, Beckwith's plans are
entitled to protection as both an architectural work and as a
pictorial, graphical, or sculptural work, and, the design of the
home, as embodied in the physical structure of the building
itself, is protected as an architectural work.

Battle correctly notes that "the construction of a home that
is identical to one depicted in copyrighted architectural plans
is not an infringement of the plans" (emphasis added), but that
statement fails to recognize that such construction, while not
infringing on the copyright in the plans as a pictorial,
graphical, or sculptural work, may well infringe upon the
architectural work embodied in the physical structure of the
original home.  Thus, while there may be no infringement of the
plans in this circumstance, the architectural work may still be

32

infringed upon.  Battle's further assertion, that "the creation
of architectural plans [] does not constitute an[] infringement
of a copyrighted architectural building" fails for the same
reason, since the building is the physical manifestation of a
copyright in the underlying architectural work, and that same
architectural work is embodied in the allegedly infringing plans.

     Accordingly, Beckwith is not entitled to dismissal of its
infringement claim regarding the architectural work embodied in
the Cedar Cove Home.

          4. The Depietris

     The Depietris argue that they are entitled to dismissal of
Beckwith's claim of direct copyright infringement because
Beckwith has not alleged that either one of them copied the
technical drawings registered in VA 1-280-015 or built the Clark
Road home, alleged to be a copy of the architectural work
registered in VAu640-190 and VA 1-280-016.  While Beth Depietri
is entitled to dismissal for reasons already given, William
Depietri is not.  Depietri is not alleged to have drawn the plans
for the Clark Road home or to have actually built it, but the
facts alleged by Beckwith, along with all reasonable inferences
construed in its favor, are sufficient to support a claim of

contributory infringement against Depietri for hiring Battle and Wood & Clay and inducing their allegedly infringing conduct.  See Venegas-Hernández v. Asociación de Compositores y Editores de Música Latinoamericana, 424 F.3d 50, 57-58 (1st Cir. 2005) (explaining the codification of the concept of contributory infringement).  Accordingly, Depietri is not entitled to dismissal of Count I.

### G. Attorneys' Fees

Among Beckwith's prayers for relief is a request for costs and attorney's fees.  Defendants argue that such an award is precluded by 17 U.S.C. § 412.  Beckwith does not respond to that argument in its objection, apparently conceding the point.

The Copyright Act provides, in general terms, for the awarding of costs and attorney's fees in an infringement action. See 17 U.S.C. § 505.  However,

> no award of statutory damages or attorney's fees, as
> provided by sections 504 or 505, shall be made for—
>
> > **(1)** any infringement of copyright in an
> > unpublished work commenced before the effective
> > date of its registration; or
> > **(2)** any infringement of copyright commenced
> > after first publication of the work and before the
> > effective date of its registration, unless such

34

> registration is made within three months after the
> first publication of the work.

17 U.S.C. § 412.


Here, VAu640-190 lists the registered work as unpublished, while VA 1-280-015 and VA 1-280-016 both list the registered works as having been first published "no later than January 15, 2000." Each of the three registrations has an effective date of November 15, 2004.


Given that Beckwith filed suit on July 28, 2004, alleging infringement he first identified in 2003, infringement of the unpublished work registered by VAu640-190 must necessarily have taken place before the effective date of the registration, which bars an award of attorney's fees in connection with Beckwith's claim that defendants infringed its copyright on the architectural work registered in VAu640-190. See 17 U.S.C. § 412(1). And given that Beckwith's other two registrations, VA 1-280-015 and VA 1-280-216, were made more than four years after first publication of the registered works, an award of attorney's fees is also barred in connection with Beckwith's claims that defendants infringed its copyrights in the works registered in VA-280-015 and VA 1-280-015.

35

### Conclusion

For the reasons given, the motion to dismiss presented in document no. 49 is granted in part and denied in part.  More specifically: (1) all claims against Beth Depietri are dismissed; (2) Count I is dismissed to the extent it asserts a claim against Wood & Clay for infringing Beckwith's copyright in the architectural plans for the Cedar Cove home; and (3) Counts II, III, IV, V, and VI are all dismissed.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 15, 2006

cc:  Paul M. Monzione, Esq.
     V. Richards Ward, Jr., Esq.
     William M. Pezzoni, Esq.
     Ann M. Dirsa, Esq.
     Michael J. Persson, Esq.
     Douglas Marrano, Esq.
     Jay S. Gregory, Esq.
     Jeffrey L. Alitz, Esq.